Filed 6/14/23  In re Alison S. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re ALISON S. et al., Persons Coming Under the Juvenile Court Law. | B320594 <br><br> (Los Angeles County Super. Ct. Nos. 19CCJP02693A-C) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> JIMMY G. et al., <br><br> Defendants and Appellants. | |

APPEALS from orders of the Superior Court of Los Angeles County, Nancy Ramirez, Judge.  Conditionally affirmed and remanded with directions.

John L. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant Jimmy G.

Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant Leonela S.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Veronica Randazzo, Deputy County Counsel, for Plaintiff and Respondent.

_____

Leonela S. and Jimmy G., the mother and presumed father of eight-year-old Alison S., six-year-old Jazper G. and three-year-old Jaycee G., appeal the juvenile court's orders denying their petitions to reinstate reunification services and terminating their parental rights, contending the Los Angeles County Department of Children and Family Services failed to comply with its duty pursuant to Welfare and Institutions Code section 224.2, subdivision (b),[1] to ask extended family members whether the children are, or may be, Indian children. They also contend the juvenile court erred in failing to make the required findings under the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.).

We agree the Department's inquiries regarding the children's possible Indian ancestry were insufficient; conditionally affirm the orders denying the petitions to reinstate reunification services and terminating parental rights; and remand the matter for full compliance by the Department and the juvenile court with the inquiry and, if appropriate, notice provisions of ICWA and related California law.

---

[1] Statutory references are to this code unless otherwise stated.

2

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The Dependency Proceedings*

On August 22, 2019 the juvenile court sustained in part a dependency petition filed pursuant to section 300, subdivisions (a) and (b)(1), on behalf of Alison and Jazper, finding true allegations concerning domestic violence between Jimmy and Leonela, Leonela's inability to protect the children from Jimmy's violence and Jimmy's history of substance abuse and mental and emotional issues.[2]  The court declared the children dependents of the court, removed them from the custody of their parents and ordered reunification services and monitored visits for Leonela and Jimmy.[3]

On July 1, 2020 the court sustained the petition filed pursuant to section 300, subdivisions (b)(1) and (j), on behalf of Jaycee following his birth, declared Jaycee a dependent child of the court and removed him from Leonela's and Jimmy's custody. Reunification services were again ordered for both parents.

Following review hearings pursuant to sections 366.21, subdivisions (e) and (f), and 366.22 to evaluate Leonela's and Jimmy's progress on their case plans, reunification services were terminated for both parents for all three children.  On January 10, 2022 Jimmy filed a section 388 petition seeking reinstatement of reunification services.  On March 15, 2022

---

[2]     The whereabouts of Oscar C., Alison's biological father, were unknown.  The court on August 22, 2019 found Jimmy was Alison's presumed father.

[3]     Maternal cousins Michael G. and Jennifer G. were present in court at the August 22, 2019 disposition hearing.  Nothing in the record indicates they were ever asked about Leonela's family's possible Indian ancestry.

Leonela filed a similar section 388 petition. A hearing on the petitions was scheduled for May 18, 2022, the same date as the section 366.26 selection and implementation hearing for the children.

After argument on May 18, 2022 the court denied the section 388 petitions. Turning to the proceedings pursuant to section 366.26, the court found neither Leonela nor Jimmy had established the beneficial parental relationship exception to adoption and terminated their parental rights to Jazper and Jaycee. The court continued the section 366.26 hearing for Alison to permit the Department to effect proper notice on her biological father, Oscar C. On August 17, 2022 the court terminated Leonela's, Jimmy's and the biological father's parental rights to Alison.

Leonela and Jimmy filed timely notices of appeal from the May 18, 2022 orders denying their section 388 petitions and terminating parental rights to Jazper and Jaycee and from the August 17, 2022 order terminating parental rights to Alison.

2. *The Department's ICWA-related Inquiries and Notices*

The ICWA-010(A) form attached to the initial dependency petition filed April 29, 2019 stated Leonela had denied that Alison or Jazper had any known Indian ancestry. In her ICWA-020 form filed April 30, 2019, Leonela checked the box indicating she had no Indian ancestry "as far as I know." The same day Jimmy filed an ICWA-020 form stating he may have Apache ancestry through the children's deceased paternal great-grandmother Petra V.P.G. and paternal grandfather Jose G. "in Mx." At the detention hearing the juvenile court deferred making an ICWA finding as to Alison because of the absence of her biological father. The court directed the Department to

4

investigate Jimmy's claim and to send ICWA notices as may be required.

Jimmy told a Department investigator during a telephone call on May 29, 2019 that he was affiliated with an Apache Tribe and had his enrollment number. The following day during an in-person interview Jimmy explained Petra V.P.G. had been part of the Tarahumara Tribe, a subdivision of the Apache Tribe. He understood the tribe was not federally recognized and said he did not have an enrollment number. The Department's June 19, 2019 jurisdiction/disposition report advised the court it would continue to further investigate Jimmy's Indian ancestry.

On November 1, 2019 with the filing of the dependency petition on behalf of Jaycee, Leonela and Jimmy provided new ICWA-020 forms. Leonela checked the box stating she was or may be a member or eligible for membership in a federally recognized Indian tribe and filled in Apache as the tribe's name. Jimmy's indicated he may have Indian ancestry in the Apache or Tarahumara Tribes. The juvenile court directed the Department "to interview mother and father and any other knowledgeable relatives."[4]

A last minute information report filed February 20, 2020 stated the Department had asked Leonela about Indian ancestry and requested relative information. Leonela indicated she did

---

[4] When it sustained the second amended petition on behalf of Alison and Jazper on August 22, 2019, the juvenile court found it had no reason to know either child was an Indian child. All parties agree that initial no-ICWA finding was superseded by subsequent orders of the court directing the Department to further investigate Alison, Jazper and Jaycee's possible Indian ancestry.

not have information for her relatives to include on ICWA notices.

As reported to the court on July 1, 2020, on March 24, 2020 the social worker spoke to Barbara V., the maternal grandmother, "who provided some relative information." The report continued that Barbara V. provided the telephone number for the maternal great-great-aunt, Adal L., who also "provided some ICWA relative information." The substance of the information provided by Barbara V. and Adal L. was not described (that is, whether it directly concerned the family's possible Indian ancestry, consisted of biographical information for inclusion on ICWA-030 notices such as the place of relatives' births or was simply further contact information).

On June 26, 2020 the social worker spoke to paternal aunt Jennifer N., who provided relative information for use in ICWA notices. Jennifer N. told the social worker Lidia G., the paternal grandmother, and Francisca M., a paternal great-grandmother, lived with her and only spoke Spanish. The social worker reported to the court that she told Jennifer N. the Department would arrange for someone to speak to those relatives to obtain accurate information for the ICWA-030 notices. The record does not reflect that any follow-up with the Spanish-speaking relatives occurred.

At the jurisdiction hearing on Jaycee's petition on July 1, 2020, the court asked Jimmy whether he had Indian ancestry. Jimmy responded he had ancestors who were members of native tribes in central Mexico that migrated to New Mexico where they "became Apaches." Describing the question as "complex enough," the court directed the Department to make sure it had all available information and to allow the Apache Tribe and the

6

federal Bureau of Indian Affairs (BIA) to sort it out. The court observed, "Basically it's up to the Apache Tribe to decide whether such a person is eligible for membership or not. I think we do need to wait and see what the tribal authorities say." The court then addressed Leonela and asked whether she had Indian ancestry. Leonela responded, "My mother does know, but she has to find out from her aunt that knows somebody that has—that was registered to it." The court noted that it sounded like information was still being gathered on the maternal side, as well as the paternal side, and directed the Department to continue working with both parents and speaking to their relatives to develop all available information for inclusion in ICWA notices to the tribes and the BIA.

On September 16, 2020 the Department's investigator contacted maternal aunt Diana C., who said she did not know anything about being Native American and told the investigator the maternal grandmother did not want to discuss the matter. (Leonela, who had been adopted as a teen by her maternal uncle Jose G. and his wife, had previously disclosed she did not speak to her mother.) Diana also stated, "My sister just wants to have the kids placed on a reservation because she wants it to be easier to get the kids back." Also on September 16, 2020 the investigator spoke to maternal aunt Marilyn S., who said she had no information regarding the family's Indian ancestry but provided biographical information regarding the maternal grandmother and grandfather.

The following day, September 17, 2020, at the six-month review hearing for Alison and Jazper and the disposition hearing for Jaycee, Leonela asserted she had Indian ancestry (tribe unknown) through her aunt Ethel (the children's maternal great-

7

aunt).[5]  The court directed the Department to attempt to reach the maternal great-aunt, gather any information she might have and then provide notice under ICWA.  The court set a nonappearance progress review date (initially for November 18, 2020) to further address ICWA issues.

Both Leonela and Jimmy provided additional information concerning the children's lineage in late December 2020.  Jimmy reported that he had spoken to the children's great-grandmother Francisca M., who told Jimmy she was unaware whether anyone in the family "has a tribal number, lived or went to school on a reservation."  The Department stated it had contacted maternal great-aunt Virgie V., who said she had no knowledge of any potential Indian ancestry.

On December 30, 2020 the Department mailed ICWA-030 notices to the BIA and to the Secretary of the United States Department of the Interior on behalf of Alison, identifying Leonela and Oscar C. as her parents, her maternal grandmother (Barbara V.) and both maternal great-grandmothers (Pilar G.V. and Lucina V.).  On the same day the Department mailed ICWA-030 notices to the seven federally recognized Apache Tribes, as well as to the BIA and the Secretary of the Interior, on behalf of Jazper and Jaycee, identifying the children's parents, paternal grandparents (Lidia G. and Jose V.P.), maternal grandparents (Barbara V. and Octavio S.), one maternal great-grandmother (Lucina V.) and all four paternal great-

_____

[5]  We recognize that many modern genealogists and family historians suggest the terms grandaunt and great-grandaunt are more accurate than great-aunt and great-great-aunt. (<https://familytreemagazine.com/general-genealogy/aunts-and-uncles-grand-not-great/> [as of June 14, 2023]; archived at https://perma.cc/6VKL-PL57.)

grandparents (Francisca M., Petra V.P.G., Rogelio D. and Leonardo G.).[6]

In a January 28, 2021 last minute information report, the Department advised the court that the Tonto Apache Tribe had indicated there was no ancestral history for Jazper and Jaycee and the Yavapai Apache Nation stated Jazper was not eligible for tribal membership.  According to the report, all other certified mail receipts for the ICWA-030 notices remained pending.

At the January 29, 2021 progress hearing, set by the Department to complete ICWA requirements, the court, referring to the Department's last minute information report, observed that some ICWA notices were still outstanding.  Accordingly, the court put the matter over to the next hearing date, March 18, 2021 (the 12-month-review for Alison and Jazper and six-month review for Jaycee).[7]  However, notwithstanding the court's deferral of the ICWA issue, the minute order for the January 29, 2021 hearing recited:  "The Court finds that the Department has completed notices to the Bureau of Indian Affairs, the Secretary of the Interior and the appropriate tribes and finds ICWA does not apply."[8]

---

[6]     The ICWA-030 notices contained the dates and places of birth for many, but not all, of the relatives identified.

[7]     None of the Department's reports in the record on appeal indicates that responses to the ICWA-030 notices were received from the other five Apache Tribes.

[8]     We have previously expressed our concern that, when reviewing the record in dependency cases, we all too often encounter minute orders that include findings not made and, on occasion, as here, directly conflict with statements by the court as reported in the hearing transcript.  (See, e.g., *In re T.G.* (2020)

9

The status review report for Jaycee's March 18, 2021 six-month review hearing, apparently relying on the erroneous minute order, stated the court on January 29, 2021 had found ICWA did not apply. ICWA was not discussed at the March 18, 2021 hearing, and no ICWA findings were made. Like all other reports from the Department after January 29, 2021 that even mentioned ICWA, the March 16, 2022 status report filed before the hearing on the parents' section 388 petitions and section 366.26 selection and implementation hearing stated the court on January 29, 2021 had found ICWA did not apply. ICWA was not discussed during those hearings at which parental rights to Jazper and Jaycee were terminated, and the court made no express ICWA findings. Similarly, the August 17, 2022 report for Alison's section 366.26 hearing again simply stated the court on January 29, 2021 found ICWA did not apply, and the minute order terminating parental rights to Alison contained no ICWA finding.

## DISCUSSION

### 1. *ICWA-related Inquiry Requirements*

ICWA and governing federal regulations (25 C.F.R. § 23.101 et seq. (2023)) set minimal procedural protections for state courts to follow before removing Indian children and placing them in foster care or adoptive homes. (*In re Y.W.* (2021) 70 Cal.App.5th 542, 551.) The statute authorizes states to provide "'a higher standard of protection'" to Indian children, their families and their tribes than the rights provided under ICWA. (*In re T.G.* (2020) 58 Cal.App.5th 275, 287-288;

_____

58 Cal.App.5th 275, 298, fn. 20.) This case vividly illustrates the harmful effect of this continuing practice.

10

see 25 U.S.C. § 1921.)  In addition to significantly limiting state court actions concerning out-of-family placements for Indian children (see *In re T.G.*, at pp. 287-288), ICWA permits an Indian child's tribe to intervene in or, where appropriate, exercise jurisdiction over a child custody proceeding (see 25 U.S.C. § 1911(c); *In re Isaiah W.* (2016) 1 Cal.5th 1, 8).

To ensure Indian tribes may exercise their rights in dependency proceedings as guaranteed by ICWA and related state law (see *In re Isaiah W., supra*, 1 Cal.5th at p. 5), an investigation of a child's possible Indian ancestry must be undertaken and, where appropriate, notice provided to interested tribes.  (See § 224.2, subd. (a) [imposing on the court and child protective services agencies "an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child"].)  The duty to inquire "begins with the initial contact" (§ 224.2, subd. (a)) and obligates the juvenile court and child protective services agencies to ask relevant involved individuals whether the child may be an Indian child.  (*In re Rylei S.* (2022) 81 Cal.App.5th 309, 316; § 224.2, subds. (a)-(c).)

Section 224.2, subdivision (b), requires the child protective agency to ask "the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled."  (See *In re T.G., supra*, 58 Cal.App.5th at p. 290; Cal. Rules of Court, rule 5.481(a)(1).)  If the court or child protective agency "has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child," the court and

the Department "shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable." (Welf. & Inst. Code, § 224.2, subd. (e); Cal. Rules of Court, rule 5.481(a)(4).) If the further inquiry "results in a reason to know the child is an Indian child, then the formal notice requirements of section 224.3 apply." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052; see 25 U.S.C. § 1912(a); Welf. & Inst. Code, § 224.3 [notice under ICWA "shall be provided" if the court, social worker, or probation officer "has reason to know . . . that an Indian child is involved"].)

"'The duty to develop information concerning whether a child is an Indian child rests with the court and the Department, not the parents or members of the parents' families.'" (*In re Rylei S.*, *supra*, 81 Cal.App.5th at p. 317; accord, *In re Antonio R.* (2022) 76 Cal.App.5th 421, 430; *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 742 ["the agency has a duty to gather information by conducting an initial inquiry, where the other party—here the parent . . . has no similar obligation"].)

2. *The Department Failed To Fully Comply with Its Duty of Inquiry Under Section 224.2, Subdivision (b)*

ICWA defines "extended family member," if not separately defined by the law or custom of the Indian child's tribe, as "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2).) Welfare and Institutions Code section 224.1, subdivision (c), provides "extended family member" is defined as provided in ICWA.

The Department's reports confirmed its social workers or investigators contacted a number of Leonela's and Jimmy's

12

extended family members: two maternal aunts, the maternal grandmother and a paternal aunt, as well as other relatives not included within the definition of extended family member (a maternal great-aunt and a maternal great-great-aunt[9]). The Department on appeal insists it made a genuine, good faith effort to investigate the children's possible Indian ancestry and contends nothing more is required to comply with section 224.2, subdivision (b).

We agree with the Department's implicit argument that section 224.2, subdivision (b), does not establish an absolute (and often impossible) standard mandating that every living extended family member be interviewed. What is required, however, is that the Department interview all known and available maternal and paternal extended family members and make reasonable efforts to identify and thereafter to interview any other extended family members, as well as other individuals who have an interest in the child, regarding the child's possible Indian ancestry. Here, although we do not suggest the Department failed to act in good faith, its efforts fell short.

Specifically, the Department did not interview, or make any showing of reasonable efforts to contact and interview, the children's maternal grandfather or the two maternal cousins who attended the disposition hearing. With respect to Jazper and

---

[9] The Department in its respondent's brief states it interviewed the children's maternal great-grandmother, Adal L. However, the July 1, 2020 last minute information report identified Adal L. as the children's great-great-aunt, and its ICWA-030 notices listed the maternal great-grandmother as Lucina V.

Jaycee,[10] the Department did not interview either of their paternal grandparents. Although the Department asserts on appeal it interviewed the paternal great-grandmother, the report it cited to support that claim stated only that Jimmy had described his conversation with that relative to a social worker, not that the Department's social worker contacted her (or even attempted to do so). In addition, the Department identified numerous other family members in its reports and other documents whom it did not interview (or explain why it could not do so), including the paternal great-grandparents, the maternal great-grandmother and a maternal great-aunt. While it certainly made a real attempt to determine the children's possible Indian ancestry, the Department did not satisfy its duty of inquiry under section 224.2, subdivision (b). (See, e.g., *In re M.B.* (2022) 80 Cal.App.5th 617, 629-630 [Department did not conduct adequate inquiry into child's possible Indian ancestry prior to terminating parental rights because it failed to contact the child's maternal grandmother, did not determine whether the maternal grandfather was available for an interview and did not ask ICWA-related questions of a maternal great-aunt who had been identified as the child's prospective adoptive parent]; see also *In re Jayden G.* (2023) 88 Cal.App.5th 301, 311 [Department violated California law by failing to ask maternal and paternal extended family members about their Indian ancestry despite

_____

[10]     Because Oscar C., Alison's biological father, was never located and never participated in the dependency proceedings, the Department suggests none of Alison's paternal family members could be interviewed about her possible Indian ancestry. Although that is not necessarily true, we need not dispute the Department's contention to decide the case.

14

having contact with maternal grandmother and maternal cousin and information about paternal grandfather's residence].)

### 3. *Remand Is Necessary for Compliance with the Department's and the Juvenile Court's ICWA-related Inquiry Obligations*

In *In re Antonio R.*, *supra*, 76 Cal.App.5th at page 436, we explained, "[I]n determining whether the failure to make an adequate initial inquiry is prejudicial, we ask whether the information in the hands of the extended family members is likely to be meaningful in determining whether the child is an Indian child, not whether the information is likely to show the child is in fact an Indian child. In most circumstances, the information in the possession of extended relatives is likely to be meaningful in determining whether the child is an Indian child— regardless of whether the information ultimately shows the child is or is not an Indian child." (See *In re Rylei S.*, *supra*, 81 Cal.App.5th at p. 325 ["the failure to fully comply with a mandatory duty may be harmless error, so long as the record affirmatively reflects that the protections intended to be afforded through the exercise of that duty have been provided"]; see also *In re Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744 ["in ICWA cases, a court must reverse where the record demonstrates that the agency has not only failed in its duty of initial inquiry, but where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child"].)[11]

---

[11] The issue of the proper standard of prejudice to apply when the Department has committed ICWA inquiry error is now pending in the Supreme Court (*In re Dezi C.* (2022) 79 Cal.App.5th 769, review granted Sept. 21, 2022, S275578).

15

In *In re Rylei S.*, *supra*, 81 Cal.App.5th at page 325, responding to the Department's mischaracterization of our prior decisions as holding that any ICWA-related inquiry error, no matter how trivial, required an automatic reversal, we described a hypothetical situation in which the agency's failure to contact all of a child's close relatives would not require a remand.[12] We then explained the difference between that example and the case before us was that the hypothetical agency, "unlike the Department, made a genuine effort to investigate the child's Indian status by complying in good faith with the mandate of section 224.2, subdivisions (b) and (e)."

Ignoring the context in which we made that statement, the Department urges us to find its omissions in this case were harmless because it acted in good faith, even if imperfectly, and because none of the relatives contacted indicated the family had ancestry in a federally recognized tribe. Neither *In re Rylei S.*, *supra*, 81 Cal.App.5th 309, nor any of our other recent decisions on the issue of prejudice, held that good faith by the Department is sufficient to excuse its failure to comply with the express statutory mandate of section 224.2, subdivision (b). To the contrary, we have consistently held that, because we do not know what we do not know, prejudice has been established when the record reflects that information from extended family members

---

[12] We provided the following hypothetical: "The child protective agency interviews the maternal grandfather; several, but not all of his four siblings; and the maternal grandfather's surviving parent, none of whom indicates the family has any Indian ancestry." (*In re Rylei S.*, *supra*, 81 Cal.App.5th at p. 325.) The failure to interview the grandfather's remaining siblings, we said, "would certainly be harmless absent some additional unusual circumstance." (*Ibid.*)

16

who were not contacted was "likely to be meaningful in determining whether the children involved were Indian children—whether the information ultimately showed they were or established they were not." (*In re Rylei S.*, at p. 324; accord, *In re Antonio R.*, *supra*, 76 Cal.App.5th at p. 436.)

That standard of prejudice is clearly satisfied here. Although Jimmy repeatedly indicated his family may have Apache ancestry, the Department interviewed only one paternal aunt; and nothing in the record indicates any effort was made to contact the paternal grandparents or paternal great-grandparents, even though their identification on the ICWA-030 notices suggests there may have been contact information available for at least some of them.[13]

The Department's efforts to interview Leonela's family were better but still too incomplete to be considered harmless error. Maternal cousins who were present in court were never contacted, nor was the maternal grandfather. And the Department's reports are devoid of any information concerning attempts to contact maternal great-aunt Ethel after she was identified by Leonela as the person with knowledge of the family's tribal ancestry and the juvenile court directed the Department to attempt to contact her. To be sure, Leonela seemed to retract her claim of Indian ancestry after growing

---

[13] The Department does not contend any errors in failing to comply with its obligation to interview extended family members were harmless because it sent ICWA-030 notices to the seven Apache Tribes. Nor could it. Those notices omitted much of the biographical information required by section 224.3, subdivision (a)(5); and, as the juvenile court repeatedly recognized in its orders to the Department, one of the purposes of those interviews is to gather the required information.

frustrated with the Department's attempts to develop her family lineage and further investigate the question. But, as discussed, the Department's obligation to interview extended family members is not dependent on a parent's statement of Indian ancestry. Here, responses from additional maternal relatives would have provided meaningful information with which to assess Leonela's earlier assertion of possible tribal ancestry.

The shortcomings in the Department's inquiries of Leonela's and Jimmy's extended family members were amplified by the juvenile court's failure to exercise its oversight responsibility. As discussed, at the January 29, 2021 progress hearing the juvenile court deferred making any ICWA findings pending receipt of additional responses to ICWA-030 notices sent by the Department. Due to an erroneous minute order stating ICWA findings had been made on that date, and the Department's repeated reliance on that error in the ICWA section of subsequent reports, the court never reviewed the adequacy of the Department's ICWA inquiries and never made any findings— express or implied—as to the sufficiency of the evidence in the record to support a no-ICWA finding. For all these reasons, remand for full compliance with ICWA-related inquiry and, if appropriate, notice requirements is necessary.

## DISPOSITION

The orders denying the section 388 petitions and terminating parental rights are conditionally affirmed.  The matter is remanded to the juvenile court for full compliance with the inquiry and notice provisions of ICWA and related California law and for further proceedings not inconsistent with this opinion.


                                            PERLUSS, P. J.


We concur:



        SEGAL, J.



        FEUER, J.